William L. COPPENBARGER, Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION, Respondent.

No. 76–1943.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1977.

Decided July 27, 1977.

Walter W. Winget, II, and James F. Kane, Peoria, Ill., for petitioner.

Leonard Schaitman, Michael Hertz, Attys., Civ. Div., Appellate Section, Dept. of Justice, Washington, D. C., for respondent.

Before SWYGERT and SPRECHER, Circuit Judges, and HOLDER, District Judge.[1]

SWYGERT, Circuit Judge.

The issue in this petition for review of action taken by the Federal Aviation Administration ("FAA") is whether the Due Process Clause requires the FAA to give an applicant for a second class airman medical certificate a hearing before denying the applicant an exemption from the governing federal regulations. We hold that no hearing is required and deny the petition for review.

I

On January 19, 1974, petitioner William L. Coppenbarger applied to the FAA for a second class airman medical certificate. The FAA denied this application on September 4, 1974, stating that petitioner "had a history of a personality disorder manifested by overt acts, as well as a history of a convulsive disorder and alcohol abuse," and therefore did not meet the regulatory requirements for a medical certificate.[2]

On November 18, 1974, petitioner sought an exemption from these regulatory requirements. He also requested that the FAA hold a hearing on his petition for an exemption. The FAA replied on February 12, 1975, acknowledging the petition but stating that the administrative procedures governing exemptions did not provide for a hearing. The reply additionally pointed out that petitioner should submit any medical information he wished the agency to consider in evaluating his petition. On February 17, 1975, petitioner asked the FAA for a copy of his current medical file and also requested that the agency delay consideration of his petition for an exemption until he had an opportunity to review that file and determine whether it was necessary to submit additional information.

The matter remained in abeyance until December 11, 1975, when petitioner asked the FAA to proceed to a decision on his petition based on medical information obtained in March 1974 which he had previ-

---

1. The Honorable Cale J. Holder, United States District Judge for the Southern District of Indiana, is setting by designation.

2. The letter stated specifically that petitioner did not meet the standards imposed by 14 C.F.R. §§ 67.15(d)(1)(i)(a), (d)(1)(i)(c), and (d)(2)(ii). 14 C.F.R. § 67.15 provides, in relevant part:

   (a) To be eligible for a second-class medical certificate an applicant must meet the requirements of paragraphs (b) through (f) of this section.

   \* \* \* \* \* \*

   (d) *Mental and neurologic—(1) Mental.* (i) No established medical history or clinical diagnosis of any of the following:

   *(a)* A personality disorder that is severe enough to have repeatedly manifested itself by overt acts.

   \* \* \* \* \* \*

   *(c)* Alcoholism. As used in this section, "alcoholism" means a condition in which a person's intake of alcohol is great enough to damage his physical health or personal or social functioning, or when alcohol has become a prerequisite to his normal functioning.

   \* \* \* \* \* \*

   (2) *Neurologic.*

   \* \* \* \* \* \*

   (ii) No other convulsive disorder, disturbance of consciousness, or neurologic condition that the Federal Air Surgeon finds—

   *(a)* Makes the applicant unable to safely perform the duties or exercise the privileges of the airman certificate that he holds or for which he is applying; or

   *(b)* May reasonably be expected, within two years after the finding, to make him unable to perform those duties or exercise those privileges; and the findings are based on the case history and appropriate, qualified, medical judgment relating to the condition involved.

ously submitted. He also renewed his request for a hearing. On January 6, 1976, the FAA informed petitioner that it was necessary for him to submit new medical information because the March 1974 medical reports were too old to be reflective of his current medical condition. On February 3, 1976, the agency specified the new information it required. Finally, it again denied petitioner's request for a hearing on March 10, 1976.

By July 8, 1976, petitioner had submitted all of the necessary medical information. The FAA denied his petition for an exemption on August 26, 1976.

Petitioner now seeks judicial review of the FAA's action. Jurisdiction in this court is based on 49 U.S.C. § 1486, which gives us power to review an order of the Administrator of the FAA[3] on the petition of a person substantially affected by that order. Petitioner's contention on appeal is that the FAA's refusal to grant him a hearing on his petition for an exemption violated the Due Process Clause of the Fifth Amendment.

## II

■ Before turning to petitioner's claim that he was entitled to a hearing, we must address the Government's argument that we lack the authority to review the Administrator's decision because it was an "action committed to agency discretion by law" and therefore unreviewable under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2). In our judgment this argument confuses the merits of the Administrator's decision with the procedure he employs to reach that decision. Whether the Administrator's action in denying an exemption fits within the narrow band of agency cases which are unreviewable in the courts, even under an "arbitrary and capricious" standard, is a question that we need not reach because petitioner is not challenging the merits of the Administrator's decision in this case. Petitioner's only contention is that the procedure that the Administrator used was

constitutionally deficient because it did not grant petitioner a hearing. Whether the Due Process Clause mandates that a governmental decision cannot be made without a hearing, regardless of the eventual outcome of that decision, is a question that the courts are uniquely qualified to answer. See, e. g., Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Hathaway v. Mathews, 546 F.2d 227 (7th Cir. 1976).

## III

In order to properly resolve petitioner's constitutional claim we must first examine the details of the statutory and regulatory scheme governing the issuance of airman certificates, including airman medical certificates.

The Federal Aviation Act empowers the Administrator of the FAA to issue an appropriate airman certificate to any person "who possesses proper qualifications for, and is physically able to perform the duties pertaining to, the position for which the airman certificate is sought." 49 U.S.C. §§ 1422(a), (b). The Administrator has promulgated regulations, pursuant to 49 U.S.C. § 1354, to inform his discretion in determining under what circumstances the various airman certificates will be issued. These regulations provide that a person must hold a second class airman medical certificate in order to be eligible for a commercial pilot's certificate. 14 C.F.R. § 61.123. They also set out the substantive requirements for obtaining a second class airman medical certificate. 14 C.F.R. § 67.15.

A person who is denied an airman certificate may appeal to the National Transportation Safety Board ("NTSB"). The statute provides that the Board must hold a hearing in reviewing the Administrator's decision, and further provides that in conducting such a hearing the Board is not bound by the Administrator's findings of fact. 49 U.S.C. § 1422(b). The Board's regulations governing review procedures

---

3. The denial of petitioner's request for an exemption was actually issued by the Federal Air Surgeon. Under federal regulations, however, an order by the Federal Air Surgeon constitutes an order by the Administrator of the FAA. 14 C.F.R. § 67.27(b)(2).

call for the hearing to be held initially before an administrative law judge. 49 C.F.R. § 821.42. At the hearing, each party has the right to present evidence and conduct cross-examination. 49 C.F.R. § 821.38. The administrative law judge's decision can then be appealed to the Board itself. 49 C.F.R. §§ 821.47–49. Judicial review of the Board's decision is available in the courts of appeals. 49 U.S.C. § 1903(d).

An applicant for an airman certificate may also petition the Administrator for an exemption from the substantive requirements of any regulation, regardless of whether the applicant has already been denied the certificate by the Administrator and has appealed that denial to the NTSB and the courts. The statute provides only the vague standard that the Administrator may grant an exemption "if he finds that such action would be in the public interest." 49 U.S.C. § 1421(c). The regulations specifically state that no hearing is to be held on a petition for an exemption. 14 C.F.R. § 11.27(a).

## IV

Whether due process requires a hearing in a particular context depends on the resolution of two issues: first, whether the interest asserted by the affected individual falls within the categories of "liberty" or "property" protected under the Fifth and Fourteenth Amendments; and second, if the interest is one to which due process is applicable, what process is due? *Morrissey v. Brewer,* 408 U.S. 471, 481–83, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Ordinarily, we would address these issues in serial order and only reach the second if we concluded that the first should be answered affirmatively. In this case, however, it is far easier to determine what procedures due process requires if it is applicable than to decide whether it is applicable at all. Since a conclusion on the second issue that is favorable to the Government would moot the necessity of reaching the first issue, we will assume, without deciding, that petitioner's

interest in a second class medical certificate is protected under the Fifth Amendment [4] and turn to a determination of whether the procedures that were available afforded him due process of law.

In deciding whether due process requires a hearing before the administrator of the FAA can deny a petition for an exemption, we must balance the individual's interest in having a hearing against the Government's interest in being able to avoid the burdens that a hearing would produce. *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This balancing process requires us to view the facts of petitioner's case against the background of the statutory and regulatory scheme that we have already outlined.

In light of this admonition, it is helpful to point out that this appeal does not involve a claim by an individual that he was denied a governmental benefit because the Government alleged that he did not meet the substantive standards set down in a statute or a regulation as prerequisites to receiving that benefit. In such a case a hearing serves the vital function of ensuring that the facts on which the denial of the benefit was predicated were accurate. *See Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). It was for this reason that Congress provided for a *de novo* hearing before the NTSB following the Administrator's decision that an applicant for an airman certificate failed to meet regulatory standards.

In this case, however, petitioner concedes that he does not qualify for a second class airman medical certificate because his medical history does not meet the substantive requirements of 14 C.F.R. § 67.15. Under this regulation an individual with a history of a personality disorder, a convulsive disorder, or alcohol abuse—and petitioner admits he has such a history—is forever disqualified from obtaining a second class airman medical certificate, regardless of whether he has recovered from these afflictions. It was· in recognition of his permanent disqualification under the governing regulations that petitioner did not appeal· the denial of his application to the

---

4. This approach was taken by the Eighth Circuit in *Graham v. NTSB,* 530 F.2d 317, 320 (8th Cir. 1976).

NTSB and take advantage of the hearing which accompanies that appeal. To do so would have been fruitless, because the NTSB only has the power to overturn the Administrator's decision if it finds that the applicant does in fact meet regulatory standards.

What petitioner is seeking is an exemption from the substantive requirements of 14 C.F.R. § 67.15. His argument supporting his petition for an exemption was that he is now fully recovered from the afflictions which are reflected in his medical history. His argument in this court is that whether he is now fully recovered is a factual issue which the Administrator should not be permitted to decide without an evidentiary hearing.

We disagree with petitioner's logic for a number of reasons. First, his contention that the only issue before the Administrator was whether petitioner had fully recovered from his previous illnesses is erroneous. The statute gives the Administrator broad discretion to grant exemptions if he finds that they are "in the public interest." Nothing in the statute requires the Administrator to grant an exemption whenever an applicant no longer shows evidence of medical disabilities which he previously manifested. The Administrator could take the position that some illnesses are so disabling to a pilot that once an applicant manifests evidence of those illnesses public safety requires that he never be permitted to fly a commercial plane again.

■ Petitioner's argument that he is entitled to an exemption if he has fully recovered amounts to a frontal attack on the regulations under which he was permanently disqualified on the theory that they violate his right to substantive due process of law. We cannot accept this argument. The requirements embodied in 14 C.F.R. § 67.15 are reasonably related to the legitimate purposes that Congress sought to effectuate in the Federal Aviation Act and therefore must be upheld on judicial review. See Graham v. NTSB, 530 F.2d 317, 319 (8th Cir. 1976).

■ Since the Administrator was not required to grant petitioner an exemption on a showing that he had recovered from his illnesses, it would be pointless for us to require an evidentiary hearing on the question of recovery. A hearing which the Administrator could ignore would be an exercise in wasted motion.

Moreover, we conclude that a hearing would be unnecessary even if the Administrator were bound to grant an exemption on a showing of full recovery.[5] As we have already noted, the purpose of a hearing is to ensure that a governmental decision is made on the basis of correct facts. In this case, however, there was no dispute about the facts which a hearing could resolve. The Administrator asked petitioner to submit various required medical reports and any other evidence which petitioner thought was pertinent, and stated that the exemption decision would be made on the basis of this material. There is no indication in the record that petitioner did not examine these reports before they were submitted. Presumably, he had the opportunity to submit additional medical reports to rebut or clarify information in the required reports which he thought was erroneous or misleading. Therefore, a hearing would not have assisted him in his effort to ensure that the proper facts were before the Administrator.

Petitioner contends, however, that he should have had an opportunity to cross-examine the experts whom the Administrator consulted in evaluating petitioner's medical reports.[6] We disagree. Petitioner's argument might be valid if these experts had affirmatively provided evidence about petitioner's medical condition. But the Administrator's purpose in retaining the experts was merely to obtain their help in evaluating the data which petitioner had supplied. The Administrator was entitled to do this, and petitioner had no more right to cross-examine the experts than he had to cross-examine the Administrator himself. See Graham v. NTSB, 530 F.2d 317, 320 (8th Cir. 1976); KFC National Management Corp. v. NLRB, 497 F.2d 298, 303–05 (2d

5. The record in this case shows that the Administrator, in the exercise of his discretion, did choose to base his exemption decision on whether petitioner had fully recovered.

6. The working paper on which the denial of the exemption was based stated that "the consultants in neurology found that [petitioner] has an abnormal EEG (seizure equivalent), and said

Cir. 1974). *See also Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1970); *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

In summary, we conclude that the present statutory and regulatory scheme granted petitioner all the process which he was due. A hearing was available at the initial application stage, where the relevant determination was purely factual, and the procedures followed by the Administrator at the exemption stage were designed to ensure that, insofar as he chose to make his decision on the basis of certain facts, those facts were accurate.

The petition for review is denied.

that he probably should be on anticonvulsant medication. They therefore recommended denial of an exemption for medical certification."

The "consultants in neurology" were not named.